**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00330-CR**
_____

**ANTHONY DUANE RILEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 1A District Court
Jasper County, Texas
Trial Cause No. 15156JD

**MEMORANDUM OPINION**

Appellant Anthony Duane Riley appeals his conviction for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03. In his sole issue on appeal, Riley complains the evidence is legally insufficient to support the jury's finding that he used or exhibited a deadly weapon in the course of committing a robbery against the complainant. We affirm the trial court's judgment.

1

# BACKGROUND

A grand jury indicted Riley for aggravated robbery, alleging that Riley, the defendant:

> did while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally and knowingly threaten or place [Carol],[1] in fear of imminent bodily injury or death, and the defendant used or exhibited a deadly weapon, namely a machete[.]

During a jury trial, Officer Frank Erimias, who was with the Kirbyville Police Department when the alleged offense occurred, testified that he was on patrol when he received a call that there was a "suspicious person, black male, wearing a white hoodie, dark pants that was exhibiting some type of weapon[]" at the Family Dollar Store. After learning the suspect took money and left and that a robbery had occurred, Erimias proceeded to the store and requested additional units that quickly responded. Erimias spoke to the store clerk and manager, who both provided a written statement describing the suspect, a weapon they believed Riley had during the robbery, and the bag of money he took along with a Scope product.

Erimias went to the location where a man who matched the description of the suspect had been identified and apprehended. The man in custody was identified as

---

[1] We use pseudonyms to refer to the victims, including the complainant, to protect all victims' privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

Riley. Upon arrival where Riley was being held, Erimias observed a white hoodie sweatshirt next to Riley and there was a "sickle-shape, machete-type knife[]" fifteen to twenty feet away from where Riley was lying. Erimias explained that the machete-type knife had a handle like one seen on a short-barreled shotgun with a bird's head grip on it and a blade that came down and sickled in like a brush cutter. Erimias also found and collected the plastic bag from the store that contained $1,361.95 and the Scope product. The jury viewed a video recording from Erimias' body camera, which captured the events. The jury also viewed the weapon recovered from the scene, and Erimias explained that one of the women thought the weapon was a knife and the other woman thought it was a sawed-off shotgun. Erimias described the machete knife as being a "scary-looking weapon[,]" and he understood how the handle could have been mistaken for some form of firearm. Erimias testified that the knife was capable of causing death or serious bodily injury. Erimias explained that although Riley had been nice and polite to the women at the store, Erimias charged Riley with aggravated robbery because Riley scared the women with a deadly weapon and stole money from them and could have killed them.

Deputy Shannon Davis Jr. was working patrol with the Jasper County Sheriff's Office when he responded to a call about a robbery at the Family Dollar Store in Kirbyville. While checking the surrounding area for the suspect who reportedly had a possible weapon, Davis found and tased Riley, who matched the

3

suspect's description. Davis found a large blade that was commonly referred to as a machete stuffed in Riley's pants with the handle sticking out. Davis identified the blade that was admitted into evidence as the blade Riley was carrying on the night of the robbery. Davis also found a pack of Scope gum on the ground where Riley had been lying. The jury viewed a video recording taken from Davis's body camera.

Carol, the manager of the Family Dollar Store in Kirbyville, testified that she and Barbara were working on the night the robbery occurred. Carol explained that as they were about to close the store, a man wearing a white hoodie and black pants put a pack of Scope gum on the counter and told her to "give me all the money." When Carol "kind of laughed" and told the man "that's not funny[,]" the man pulled his hoodie up and patted his side, causing Carol to notice that he had a big, wooden handle sticking out of his waistband. Carol explained she was nervous because it looked like a homemade handle of a knife, and noticing the big handle of the knife scared Carol because she thought something was going to happen to Barbara. Carol stated that Barbara believed the man had a sawed-off shotgun, and she agreed that the man never took the weapon out of his pants or threatened to cut her.

Carol was scared and believed that the man would hurt her or Barbara if she did not do what he said, but Carol stayed calm due to her training. Carol explained that the man did not verbally threaten her or state he was going to use the knife, but he had his hand on the knife and patted his side, which was scary "enough[]" to

4

know they were in danger because Carol knew how much damage knives could cause. Carol gave the man the money in the drawers and the top safe and put the money in a bag, and when she told the man there were cameras and it would take ten minutes to open the bottom safe, he pulled down his black COVID mask and revealed he had a full, peppered beard. The man took the bag of money and Scope and "said thank you and then walked out." Carol immediately called 911, and the police arrived before she completed the call. The jury viewed the video recording of the robbery captured on the store's surveillance cameras.

Barbara testified that she was working as a cashier at the Family Dollar Store when the robbery occurred. Barbara explained that a man came to the register to buy a package of travel Scope and then asked her to hand him all the money, raised up his hoodie, showed Barbara what she thought was a pistol in the waistband of his pants, patted the handle, and demanded money. Barbara described the man as wearing a dark-colored COVID mask, white hoodie, and dark-colored jogging pants. Barbara explained that during the robbery, she tried to keep calm and thought about whether she would make it home to her children if the man used the weapon.

Barbara explained that the man did not show the weapon "too good or too often[,]" but he showed it twice leading her to believe the weapon was a pistol grip or a grip of a sawed-off shotgun. Barbara testified that although the man never pulled the weapon out of his waistband, she did not need to know exactly what the weapon

5

was to feel threatened or fear being hurt. Barbara stated that the handle of the knife that was admitted into evidence looked like the handle of the weapon she saw in the man's waistband when he committed the robbery. Barbara also stated she felt scared and threatened even though the man was nice and polite during the robbery. Barbara explained that the store had surveillance cameras in the register area. The video recording from the store's surveillance cameras supports Carol's and Barbara's testimonies that Riley showed them a weapon and patted the weapon when he demanded that they give him all the money.

The jury found Riley guilty of aggravated robbery as charged in the indictment and assessed Riley's punishment as a habitual offender at thirty-five years of confinement.

## ANALYSIS

In his sole issue, Riley complains that the evidence is legally insufficient to support the jury's finding that he used or exhibited a deadly weapon in the course of committing a robbery against the complainant.

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837-38 (Tex. Crim. App. 2016). Under *Jackson*, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*,

6

443 U.S. at 319 (citation omitted); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the above evidence. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citation omitted). We presume the jury resolved any conflicts in testimony in favor of the verdict. *See Brooks*, 323 S.W.3d at 899 n.13. We treat direct and circumstantial evidence equally and "consider the combined and cumulative force of the evidence" viewed in the light most favorable to the jury's verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citation omitted).

A person commits the offense of robbery if, in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* Tex. Penal Code Ann. § 29.02(a)(2). A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2). A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). An alleged robber's implicit threats may lead to a victim's being placed in fear so long as the defendant's actions are "of such nature as in reason and common experience is likely to induce a person to part with property against his will," because any perceived threat of imminent bodily injury will support a finding

7

that the victim was threatened or placed in fear. *Howard v. State*, 333 S.W.3d 137, 138-39 (Tex. Crim. App. 2011).

While a knife is not a deadly weapon per se, the State can establish that a knife is a deadly weapon by showing that "the person using it intends to use it in a way in which it would be capable of causing death or serious bodily injury." *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd). In cases where there is no sustained injury, the State must rely on the following factors to establish that a knife is a deadly weapon: (1) the size, shape, and sharpness of the blade; (2) the manner of the knife's use or intended use; (3) evidence of its life-threatening capabilities; (4) the distance between the knife and the victim; and (5) any words spoken by the person using the knife. *Id.* The jury may consider the size, shape, and sharpness of the knife in determining whether the knife is capable of causing death or serious bodily injury. *Clark v. State*, 444 S.W.3d 671, 678 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

The jury may also use common sense and apply common knowledge and experience when giving effect to the inferences that may be reasonably drawn from the evidence. *Gerron v. State*, 524 S.W.3d 308, 318 (Tex. App.—Waco 2016, pet. ref'd). A person "uses or exhibits a deadly weapon" under the aggravated robbery statute if he employs the weapon in any manner that "facilitates the associated felony." *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000) (citing

*Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). The word "use" is commonly employed to describe conduct in which the verb's object–a deadly weapon–is utilized to achieve a purpose, which means the deadly weapon must be utilized, employed, or applied to achieve the intended result of committing a felony offense. *Patterson*, 769 S.W.2d at 940-41.

Riley complains the evidence is insufficient to support the jury's deadly weapon finding because Carol and Barbara never saw a blade and he did not brandish or gesture with the knife, make any threats, or try to close the distance between himself and the employees who were separated by the sales counter. Riley argues the evidence does not show he "used" a deadly weapon and only shows he "twice patted a concealed handle while calmly asking for money." We disagree.

Carol testified that she saw a big, wooden handle that looked like a knife handle sticking out of Riley's waistband and that Riley patted the handle, causing her to be scared and upset. Carol knew they were in danger when she saw the knife, and she believed Riley would hurt her or Barbara if she did not do what he said and give him the money.

Barbara felt scared and threatened when Riley raised his hoodie and twice showed her what she thought was a firearm in the waistband of his pants. Barbara explained that Riley patted the handle of the weapon when he demanded the money.

9

Erimias testified that he found a "sickle-shape, machete-type knife[]" fifteen to twenty feet away from where Riley was lying. Erimias understood how the handle of the knife could have been mistaken for a firearm. Erimias testified that the knife was capable of causing death or serious bodily injury. Erimias charged Riley with aggravated robbery because Riley scared Carol and Barbara with a deadly weapon while stealing money.

Based on this record, we hold that due to the exposure of the handle in Riley's waistband and Riley's tapping on the handle while demanding money during the robbery, the jury could have rationally concluded that Riley did not merely possess a knife but partially exposed the handle of the knife during the criminal transaction and used its presence to cause fear of imminent bodily injury or death in Carol and Barbara to reduce the likelihood they would resist his demands. Thus, the evidence supports the jury's finding that Riley used a deadly weapon by employing the weapon in a manner that facilitated Carol's and Barbara's cooperation so he could achieve his intended result of committing a robbery. *See McCain*, 22 S.W.3d at 502-03; *Patterson*, 769 S.W.2d at 940-41; *Brown v. State*, No. 09-10-00233-CR, 2011 WL 1204016, at **1-2 (Tex. App.—Beaumont Mar. 30, 2011, pet. ref'd) (mem. op., not designated for publication). Additionally, Erimias testified that the knife was capable of causing death or serious bodily injury, and the jury viewed the knife

during trial and was able to observe its characteristics and determine whether it was capable of causing serious bodily injury or death. *See Clark*, 444 S.W.3d at 678.

After viewing the evidence in the light most favorable to the jury verdict, we conclude the jury could have found the essential elements of the crime of aggravated robbery beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. Accordingly, we conclude the evidence is sufficient to support the jury's verdict finding that Riley used or exhibited a deadly weapon in the course of committing the robbery. We overrule Riley's sole issue and affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on May 13, 2026
Opinion Delivered July 15, 2026
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

11